Neel, Stephen E., J.
Plaintiff William J. Devine (Devine), trustee of the Loomis Realty Trust (trust), filed this action to recover damages allegedly caused by a taking of real property by the Town of Nantucket (town). Before the Court are the parties’ cross motions for summary judgment. For the following reasons, the plaintiff s motion will be allowed in part and denied in part, and the defendant’s motion will be allowed in part and denied in part.
BACKGROUND
The Court need not recite the complete factual and procedural background, which is set forth in Devine v. Town of Nantucket, 449 Mass. 499 (2007). For purposes of this motion, the Court notes the following.
In 1968, the town took certain property close to Nantucket Airport by eminent domain (the property).[3] In 2001 the trust, which had purchased the property in 1988 and obtained permits to build in 1998 and 2000, began construction of a house on the property. By letter dated June 12, 2001, the town informed the trust that the property was the subject of a 1968 taking, pursuant to which the town issued a stop work order and rescinded the building permits. The town also filled in excavation on the property, and enclosed the property in a steel fence, rendering it inaccessible to the trust. On August 27, 2001, the trust filed an action to quiet title and for damages pursuant to G.L.c. 79, §14[4] in the event the Court should find that its property was taken (2001 action).[5]
The trust initially moved to have the trial bifurcated to address separately the issues of the validity of the taking and of valuation and damages, Combined Appendix, Hillman Aff., Ex. C, at 5, stating in relevant part that “[if] the taking was void, the Trust will have title to the Locus and it may then pursue an inverse condemnation claim against the Town for its actions after the Trust commenced construction.” The Court (Bohn, J.) denied the motion. Hillman Aff., Ex. E. In the pre-trial memorandum the trust, after noting that it sought a declaration that it was the owner, Graeter Aff., Ex. 4, at 3-4, stated that, “[sjhould the taking be found to have been a valid taking, the Loomis Realty Trust argues in the alternative that it is entitled to compensatory damages in the amount of the fair market value of the Locus, plus interest” and out-of-pocket damages. Id. (emphasis in the original). The town argued, inter alia, that the plaintiff lacked standing to claim damages because it was not the owner of the land at the time of the taking in 1968 and that, in any event, damages would be limited to the value of the property at that time.
In his answer to the town’s interrogatory regarding damages, Devine asserted that, “(assuming I obtain a judgment quieting title in the Trust and declaring it to be the owner of the property, and assuming the Town vacates the properly and returns it to my possession, I will assert a claim for damages caused by the temporary taking. These damages will include loss of use of the property since June 2001, my legal fees in this case, the damage done to my excavation and preparation for construction, and the increased cost of materials and construction from 2001 to the date I can resume construction.” Graeter Aff., Ex. 5, at 3.
A jury-waived trial was held before the Court (Ford, J.) on May 6, 2005. Of particular importance to the instant motions is the following exchange between counsel for the trust, attorney Graeter, and the Court during Mr. Graeter’s opening statement:
THE COURT: So in your complaint you’re seeking what, a declaratory judgment?
MR. GRAETER: We’re seeking a declaratory judgment that Mr. Devine owns clear record title to the property and we’re seeking an action to quiet title of the property of Mr. Devine as trustee of the Loomis Realty Trust.
THE COURT: I thought I read somewhere that in the alternative you’re seeking damages?
MR. GRAETER: The complaint in the alternative would seek eminent domain damages or as an alternative if quiet title is not allowed we seek eminent domain damages to the extent those are permitted as well based on the taking in 2001; however, the evidence, at some point during this trial, your Honor, the evidence may require us to *580 seek to amend those pleadings to conform with the evidence.
THE COURT: So you intend to present evidence of the fair market value?
MR. GRAETER: No, there will be no evidence of the damages and the fair market value of this case, your Honor, because our position is the taking was void ab initio in 1968.
THE COURT: So you’re waiving your claim for damages?
MR. GRAETER: I believe in conversations with the town counsel if the taking was found to have been valid and the statute of limitations began to run in 1970 against anyone, well then certainly, I mean without conceding that the claim would have been time barred. If that taking was invalid, then my client holds title to the property. You will not be hearing from an evaluation expert today on that issue.
THE COURT: Okay.
MR. GRAETER: If we prevail on the title issue, your Honor, it would certainly be up to the airport whether they wish to proceed and take the property and treat it as having been taken and pay or to relinquish title and control to us. And that issue can be settled in a subsequent proceeding over damages for the taking from June 2001 to the present.
THE COURT: Okay. But if you don’t prevail under the claims here today, you’re not presenting any evidence of the fair market value of the property?
MR. GRAETER: No.
Graeter Aff., Ex. 2. Town counsel’s opening statement immediately followed this exchange. Nowhere in either his opening or during the trial did the town’s counsel argue that the issue of damages would have to be presented at that time. Graeter Aff., Ex. 3.
In a decision issued on November 2,2005, the Court found that the town had failed to take reasonable steps to determine the record owner of the property and thus that the order of taking was not properly listed in the grantor index, was not recorded “in due course” as required by G.L.c. 184, §25, and was therefore invalid. Nadel Aff., Ex. 3, at 11-12. As to damages, the Court noted that, because the taking was invalid and the trust was the owner, it “need not consider Count III of the Trust’s complaint, which seeks an assessment of damages for the taking. In any event, there was no evidence presented at trial as to the fair market value of the Locus at the time of the taking.” Id., at 18.
On November 10,2005, judgment entered for plaintiff on Count I, declaring that Devine as trustee was the owner in fee simple of the property, and Count II, quieting title. Nadel Aff., Ex. 4. As to Count III of the complaint, judgment entered in favor of defendant on the trust’s claim for eminent domain damages pursuant to G.L.c. 79, §14. Hillman Aff., Ex. G. On July 19, 2007, the Supreme Judicial Court affirmed the judgments.
What followed thereafter is a matter of some dispute. The trust asserts that it repeatedly requested that the town remove the fence surrounding the property immediately, but that the town refused to do so for eight months. The town responds that the parties engaged in a series of negotiations regarding the location of the fence and that, therefore, the trust acquiesced in any delay. When the town finally relocated the fence, according to the trust, the fence ran across Everett Street, a “public way” that abuts the property, thus blocking a point of access.[6] The town answers that Everett Street is not a public way and, in any event, that the fence does not bar access and thus cannot be a basis for liability. The trust filed the instant action on July 11, 2008, seeking damages for a temporaiy taking pursuant to G.L.c. 79, §10 (Count I), or, in the alternative, damages for trespass (Count II).
DISCUSSION
The Court may grant summary judgment where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). “The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
With regard to Count I, the Court concludes at the outset that the trust may not recover damages pursuant to G.L.c. 79, §10. Section 10 applies only to those injuries to property taken without a formal vote or order of a body politic. G.L.c. 79, §10. See also Onorato Bros., Inc. v. Massachusetts Turnpike Auth., 336 Mass. 54, 56 (1957) (where no indication that “the entiy on [the property] was authorized by any formal vote or order,” c. 79, §10 governs recovery); United States Gypsum Co. v. Mystic River Bridge Auth., 329 Mass. 130, 140-41 (1952). Here, the town’s entry on the property in 2001 was pursuant to the 1968 taking, authorized by vote of the Nantucket Airport Commission, rendering section 10 inapplicable and Count I without basis. The question remains whether Count II, for trespass, survives the town’s challenge of claim preclusion.
The town argues that the doctrine of claim preclusion bars the current claims where the trust had a full opportunity to litigate them in the 2001 action but failed to do so. The town points out that the claims here arise from the same factual scenario as those in the 2001 action, and thus that final judgment in that action precludes further litigation. As support there *581 for, the town notes that the trust moved to bifurcate the 2001 action; therefore, the town argues, the trust understood that it could have litigated its damages claims at that time.
The trust takes the position that the 2001 action addressed only the validity of the 1968 taking, while this case concerns the town’s actions in 2001, including erection of the fence, and its wrongful use and modification of the property between 2001 and 2008. Therefore, the trust argues, the town cannot establish the identity of causes of action where the present complaint seeks to redress entirely different conduct than was at issue in the 2001 action. As to damages, the trust contends that it claimed only eminent domain damages in the earlier action, not damages for loss of use, rental income, property taxes and construction costs. According to the trust, it could not have asserted those damage claims until there was a final judgment that the taking was invalid and it had title to the property. In addition, the trust maintains that, in the circumstances here, there is no requirement that a party having a number of claims against a defendant must join them in a single action. Even were the Court to conclude otherwise, the trust argues, the town and the Court acquiesced in its plan to litigate damages in a separate proceeding, and so established an equitable exception to claim preclusion.
The town is correct that the doctrine of claim preclusion disfavors claim splitting. To promote judicial economy, “the entry of a valid and final judgment extinguishes ... all rights of a plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.” Boyd v. Jamaica Plain Cooperative Bank, 7 Mass.App.Ct. 153, 163 (1979), quoting Restatement (Second) of Judgments, §61(1) (Tent. Dft. No. 5, 1978). Thus all legal theories supporting a claim must be presented “when the opportunity is available, not preserved for presentation through piecemeal litigation.” Day v. Kerkorian, 61 Mass.App.Ct. 804, 811 (2004). If a claimant has had a full and fair opportunity to assert claims against a defendant, but has failed to do so, he is precluded from asserting those claims in a subsequent action. Id. at 811-12. See also Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass.App.Ct. 86, 98 (1999). In this context, “claim” is defined broadly. Chestnut Hill Dev. Corp. v. Otis Elevator Co., 739 F.Sup. 692, 700 (D.Mass. 1990) (applying Massachusetts law).
The Court is not persuaded by the trust’s argument that the claims in the 2001 action sought redress for conduct that was entirely different from that at issue in this action. Although the 2001 action was to quiet title, nonetheless it arose out of a taking by the town. Furthermore, the 2001 action was triggered by a letter from the town to the trust asserting ownership, and by the erection of a fence denying the trust access to the property. The conduct of the town comprised a series of connected actions all related to, and arising from, the 1968 taking.
Nor can the trust argue that it was foreclosed from asserting a claim of damages where its ownership of the property had not been established by a final judgment. Although the trust correctly points out that to prevail on a claim for trespass, the town must show a right to possess the property, in 2001 the trust believed that it was the title owner by virtue of the 1988 purchase. It had obtained permits and started construction. In like manner, the town believed that it was the owner by virtue of the 1968 taking. At issue in the 2001 action, therefore, was whether the town or the trust was the rightful owner. Because the trust’s 2008 claims arise also out of that central issue,[7] the Court concludes that the trust has engaged in claim splitting. That conclusion does not, however, end the analysis.
In certain circumstances, and in light of equitable principles, courts have relied on the Restatement (Second) of Judgments §26(1)(a)[8] for the proposition that, where a plaintiff has split its claim, and a defendant has in effect acquiesced, the general rules of res judicata and claim splitting are not applicable. See, e.g., Chestnut Hill Dev. Corp., 739 F.Sup. at 701; Diversified Mortgage Investors v. Viking Gen. Corp., 16 Mass.App.Ct. 142, 148-49 (1983); Pueschel v. United States, 369 F.3d 345, 356 (4th Cir. 2004). Here, the trust’s motion to bifurcate, as well as Devine’s answer to the town’s interrogatories, see supra, clearly put the town on notice that the trust intended to seek compensatory damages in the event it was declared title owner of the property. Attorney Graeter, in his opening statement, explicitly informed the Court that, should the taking be held invalid, the town would have to decide whether to effect a new taking, or relinquish the property. In either case, Mr. Graeter stated, “that issue can be settled in a subsequent proceeding over damages for the taking from June 2001 to the present.” Counsel for the town made no objection, nor did he bring to the Court’s attention any possible bar to a subsequent proceeding.
The Court concludes that the town’s failure to object constitutes an implicit agreement to split the claims into two: one to quiet title and (if plaintiff prevailed) another for damages. Although the Court finds no Massachusetts case directly on point, courts in other jurisdictions, and federal courts applying the laws of other jurisdictions, have relied on section 26(l)(a) of the Restatement for the proposition that failure timely to object constitutes a waiver of a res judicata defense. See, e.g., Carmichael v. Adirondack Bottled Gas Corp. of Vermont, 635 A.2d 1211, 1215-16 (Vt. 1993); Piagentini v. Ford Motor Co., 901 N.E.2d 986, 996 (Ill. 2009); Calderon Rosado v. General Elec. Circuit Breakers, Inc., 805 F.2d 1085, 1087 (1st Cir. 1986) (applying Puerto Rico law); In re Super Van, Inc., *582 92 F.3d 366, 371 (5th Cir. 1996); Klipsch, Inc. v. WWR Tech., Inc., 127 F.3d 729, 734-35 (8th Cir. 1997) (applying Indiana law); Davis v. Sun Oil Co., 148 F.3d 606, 612 (6th Cir. 1998) (applying Ohio law); Cowan v. Ernest Codelia, P.C., 149 F.Sup.2d 67, 75-76 (S.D.N.Y. 2001) (applying New York law); Barreto Rosa v. Varona-Mendez, 393 F.Sup.2d 122, 131 n.5 (D. Puerto Rico 2005) (applying Puerto Rico law).[9]
This is not a case where the town was unaware of the trust’s intention to seek damages, or where judgment was entered against the plaintiff in one action, and the plaintiff brought a second action asserting a different theoiy of recovery in an attempt to obtain a more favorable judgment. On the contrary, the town was on notice well before trial, and again during trial, that the trust intended to file a separate action. The town could have objected on the grounds of claim splitting, but did not; it may not assert that defense now.[10]
Furthermore, the trial transcript strongly suggests the Court’s concurrence with trust counsel’s position that, if the trust were to prevail as to title, the issue of recompense from the town “can be settled in a subsequent proceeding over damages for the taking from June 2001 to the present.” Graeter Aff., Ex. 2, at 17-18.[11] See Restatement (Second) of Judgments §26(1)(b).[12] See also Perroncello v. Donahue, 64 Mass.App.Ct. 564, 570 (2005) (quoting Apparel Art Intl., Inc. v. Amertex Enter. Ltd., 48 F.3d 576, 586 (1st Cir. 1005)): “[u]nder a generally accepted exception to the res judicata doctrine, a litigant’s claims are not precluded if the court in an earlier action expressly reserves the litigant’s right to bring those claims in a later action”; Cason v. Glass Bottle Blowers Ass’n of United States and Canada, 231 P. 2d 6, 9 (Cal. 1951). The judgment as to Count III does not require a different conclusion, because Count III sought recovery only for damages in the event the taking was held valid.
As to the trust’s contention that the town refused to remove the fence immediately upon request, the town has presented evidence in the form of a letter dated January 18, 2008 from counsel for the trust indicating that the location of the new fence was a matter of some negotiation between the parties. Peterson Aff., Ex. 1. The Court concludes that there are genuine issues of material fact as to whether the town trespassed on the property between July 19, 2007, the date of the Supreme Judicial Court’s decision in the 2001 action, and the date on which the fence was moved in 2008. [13]
ORDER
For the foregoing reasons, the trust’s motion for summary judgment as to Count I is DENIED, and its motion for summary judgment as to Count II is ALLOWED as to the town’s liability for trespass on the property from June 12, 2001, until July 19, 2007. The town’s motion for summary judgment on Count I is ALLOWED, and its motion for summary judgment as to Count II is DENIED. Remaining to be determined at trial are two issues: (1) damages for trespass for the period June 12,2001, to July 19,2007, and (2) liability and damages for the town’s alleged trespass from July 19, 2007 until the date the fence was moved in 2008.

 The order of taking was by vote of the Nantucket Airport Commission. Two amendments in 1970 are not pertinent to this motion.

 Section 14 reads, in pertinent part: “A person entitled to an award of his damages under this chapter .. . may petition for the assessment of such damages to the superior court of the county in which the property taken or injured was situated.”

 The complaint sought a declaratoryjudgment that Devine was the rightful owner of the property (Count I) and to quiet title (Count II). Count III asserted a claim for damages “in the event that the Court finds . . . [that] the Trust is a person whose property has been taken,” and petitioned the Court for an assessment of damages pursuant to G.L.c. 79, §14.

 The complaint asserts that the town removed the fence on February 14, 2008 (complaint at 3); plaintiffs statement of facts, however, asserts that the fence was removed on March 9, 2008 (PL’s SOF«5).

 With the exception of the fencing which remained after the Supreme Judicial Court’s ruling in 2007; see below.

 “When any of the following circumstances exists, the general rule of §24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein.” As comment (a) explains, “(t)he parties to a pending action may agree that some part of the claim shall be withdrawn from the action with the understanding that the plaintiff shall not be precluded from subsequently maintaining an action based upon it. The agreement will normally be given effect. Or there may be an effective agreement, before an action is commenced, to litigate a part of a claim in that action but to reserve the rest of the claim for another action . .. Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiffs claim is effective as an acquiescence in the splitting of the claim.”

 The Court notes that the illustration to comment (a) of the Restatement §26, as well as many of the cited cases, concern actions that were filed at the same time. But see Piagentini v. Ford Motor Co., supra, 901 N.E.2d at 996 (court, noting comment (a), concluded nonetheless that “it is the defendant’s failure to object to the claim-splitting, no matter how that claim-splitting occurs, that constitutes acquiescence”).

 To the extent that the trust argues the town is liable because the new fence cuts across a public way, the argument fails. Even assuming that Everett Street is a public way, “[a] claim for monetary damages is only available [for the taking of a roadwayl if a parcel is rendered landlocked by the discontinuance of a public way.” Nylander v. Potter, 423 Mass. 158, 163 n. 10 (1996). The trust does not argue that the property is landlocked.

 The Court’s response was, “Okay. But ifyou don’t prevail under the claims here today [i.e., the title issue], you’re not presenting any evidence of the fair market value of the property?” Mr. Graeter’s response: “No.” Id. at 18.

 Section 26(l)(b) provides that a claim is not extinguished if “[t]he court in the first action has expressly reserved the plaintiffs right to maintain the second action.” Comment (b) explains that “[a] determination by the court that its judgment is ‘without prejudice’ (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action.”

 As noted in n.6, supra, there is some confusion as to the date the fence was moved.